UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Tammy Lynn Kerreos,**

       **Plaintiff,**          **Civil Action No. 10-14935**

       vs.                   **District Judge Julian Abele Cook**

**Commissioner of Social**      **Magistrate Judge Mona K. Majzoub**
**Security,**

       **Defendant.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Tammy Lynn Kerreos has filed this civil action seeking judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security income and disability benefits for her bipolar disorder and her alcohol and marijuana use. (Dkt. 1.) *See* 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment. (Dkt. 8, 11.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 3.) The Court has reviewed the pleadings, dispenses with oral argument, and is now ready to issue its report and recommendation.[1]

**I.   Recommendation**

Because substantial evidence exists that supports the ALJ's decision and the Court is not persuaded by Plaintiff arguments that the ALJ failed to consider a medical opinion and that the ALJ's hypothetical was impermissible, the Court recommends that Plaintiff's motion for summary

---

[1] E.D. Mich. LR 7.1(f)(2).

judgment be DENIED, Defendant's motion for summary judgment be GRANTED, and this case be DISMISSED.

## II.     Report

### A.     Facts

#### 1.     Procedural history

On June 8, 2007, Plaintiff filed for supplemental security income, disability, and disability insurance benefits. (AR at 12.) On August 17, 2007, Defendant denied her request. (*Id.*) Plaintiff then requested a hearing, which was held on January 4, 2010. (*Id.*) On April 8, 2010, in a written decision, the ALJ denied Plaintiff's request for social security income and disability benefits. (*Id*. at 9.) On October 7, 2010, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (*Id*. at 1.) On December 13, 2010, Plaintiff filed this complaint seeking judicial review of the Commissioner's decision.

#### 2.     Plaintiff's treatment history

Plaintiff has a long history of treatment of her bipolar disorder–both with medication and counseling. What follows is a sketch of Plaintiff's treatment history from the record.

From December 22, 2003 until April 27, 2004 Plaintiff visited the Catholic Family Service of the Diocese of Saginaw (CFS) for treatment and counseling. (AR at 167.) On April 27, 2004 CFS terminated its relationship with Plaintiff, due to Plaintiff's failure to attend appointments and return calls. (*Id.*)

On her December 22, 2003 CFS intake form, Plaintiff stated that her life was in shambles–her family's housing was not adequate, her work hours were cut, and her children were angry with her and probably hated her. (*Id*. at 172.) The intake form shows that Plaintiff's key

problem areas were depression, substance abuse, and grief issues. (AR at 176.) The intake form also shows that Plaintiff stated that she cannot stop drinking once she has started and that she smoked marijuana. (*Id*.)

The records of the remaining visits with CFS paint a similar picture to Plaintiff's intake form. The records show that Plaintiff was often depressed, anxious, and sad. (*Id*. at 170, 169.) Although she was, at times, "[g]aining motivation for change" and was making progress "[s]taying calm [and] not over[-]reacting," she continued to have anxiety and depression problems through her treatment relationship with CFS. (*Id.* at 169, 168.) At her termination interview, CFS noted that Plaintiff had made progress: she was "[c]almer, [had] less depression, [and was] sustaining abstention from drugs [and] alcohol."

On August 31, 2006, Plaintiff admitted herself to the hospital for depression. (*Id*. at 177.) She reported to the hospital that she was suicidal and wanted mental health treatment. (*Id*.) The report indicates that Plaintiff stated that she occasionally drank and smoked marijuana. (*Id.*) On that day, Plaintiff tested positive for marijuana and cocaine, although she denied using those substances. (*Id.*)

In 2007 and 2008, Plaintiff had an ongoing treatment relationship with Dr. Arvind Kumar, a psychiatrist, and received counseling from Westlund Child Guidance Clinic. The Court discusses these relationships and Plaintiff's results from these relationships below.

On October 24, 2007 Plaintiff began a treating relationship with Dr. Arvind Kumar. On that date he performed a psychiatric evaluation of Plaintiff.[2] Dr. Kumar reviewed Plaintiff's history and

---

[2]The Court notes that the evaluation does not actually contain Dr. Arvind Kumar's name, but from the later records, the signature appears to be Dr. Kumar's.

previous psychiatric interventions. (*Id*. at 246.) He noted that Plaintiff stated that she drank once or twice a week and drank up to a 'fifth' of alcohol each time. (AR at 247.) He also noted that she had been drinking since she was thirteen. (*Id.*) She also told him that she used marijuana and smoked a half of a pack of cigarettes a day. (*Id.*) Dr. Kumar diagnosed Plaintiff with bipolar mood disorder, alcohol abuse, marijuana abuse, dependent and borderline traits, acid reflux disease, tubes in her ears, Bell's Palsy, and a history of alcohol and tobacco abuse. (*Id*.) Dr. Kumar recommended medication and supportive psychotherapy. (*Id.*)

On November 14, 2007, Plaintiff again visited Dr. Kumar. (AR at 245.) She told Dr. Kumar that she was doing "much better on [her] medication" but that a week earlier she started having an upset stomach from the medication, and that she started feeling depressed and having crying spells again. (*Id*.) At this appointment, Dr. Kumar asked Plaintiff to cut down on her drinking and continue her medications and therapy. (*Id.*)

On December 12, 2007 Dr. Kumar noted that Plaintiff stated that she had been doing well the last couple of weeks, but complained that she was feeling depressed again and had crying spells. (AR at 244.) Dr. Kumar asked Plaintiff to abstain from drinking and continue her medications and therapy. (*Id.*)

On February 6, 2008, Dr. Kumar saw Plaintiff again. (AR at 243.) Dr. Kumar noted that Plaintiff stated that she had been drinking a 'fifth' of Crown Royal three to four times a month. (*Id.*) She also stated that she continued to feel depressed, had mood swings and crying spells, but did not have any suicidal or homicidal thoughts. (*Id.*) Dr. Kumar again requested that Plaintiff stop drinking and continue her medication and therapy. (*Id.*)

A February 6, 2008 Westlund Guidance Clinic progress review shows that Plaintiff could not stop drinking on her own, only left her house to drink, and smoked a joint a day, and was generally progressing poorly. (AR at 307.)

On April 9, 2008 Plaintiff saw Dr. Kumar again. (AR at 241.) He noted that Plaintiff had been "drinking off and on" and he asked her not to drink. (*Id.*) The report shows that Plaintiff denied having suicidal or homicidal feelings, but that she did still have mood swings. (*Id.*) As he did previously, Dr. Kumar asked Plaintiff to stop drinking and recommended that Plaintiff also continue her medications and see her therapist on a regular basis for supportive psychotherapy. (*Id.*)

A June 3, 2008 Westlund Guidance Clinic progress review shows that Plaintiff had not been taking her medication and that she was drinking heavily. (AR at 305.)

On June 4, 2008 Plaintiff again visited Dr. Kumar (AR at 304.) and informed him that she stopped taking her medication because she had been drinking. (*Id.*) The report states, "[s]he promises not to do this again. She was doing well when she was taking medication." (*Id.*) Dr. Kumar again asked her to stop drinking, continue her medications, and continue her therapy. (*Id.*)

A June 12, 2008 Westlund Guidance Clinic progress review shows that Plaintiff had cut "way back" on alcohol and weed, but that she had increased her smoking. (AR at 303.) The report also shows that Plaintiff was completely "sick" of it, had been fighting with her sister, and had unresolved grief issues. (*Id.*)

A June 24, 2008 Westlund Guidance Clinic progress review shows that Plaintiff's medications appeared to help reduce Plaintiff's crying. (AR at 302.) The report also shows that Plaintiff stated that she has not gotten drunk and had smoked weed only minimally. (*Id.*)

A September 15, 2008 Westlund Guidance Clinic progress review shows that Plaintiff had been taking her medication, but that she needed an appointment. (AR at 301.) The review indicates that Plaintiff had been doing well not drinking. (*Id.*)

Plaintiff had a medication review on October 1, 2008 with Dr. Kumar. (AR at 300.) Dr. Kumar reported that Plaintiff had missed the last four months of appointments. (*Id.*) He also reported that Plaintiff had been drinking occasionally, not doing well, and feeling nervous and anxious. (*Id.*) Again Dr. Kumar asked Plaintiff not to drink. (*Id.*) And he recommended that she take her medications and go to her supportive psychotherapy. (*Id.*)

Relevant to this motion, Plaintiff argues that the opinion of Dr. Malik should be weighed more heavily. There is no indication in the record how frequently Dr. Malik saw or treated Plaintiff. But on December 29, 2009 Dr. Malik filled out a Medical Source Statement (Mental) for Plaintiff. (AR at 339.) On that statement Dr. Malik checked boxes that indicated that Plaintiff was either markedly or moderately limited in various criteria. (*Id.*) The statement posits the question: "[t]o what extent has drug addiction or alcoholism contributed to the above limitations." (*Id.*) Dr. Malik checked the box "[n]one or not significantly," after, it appears, he scratched out "[m]ildly." (*Id.*)

### 3.     The ALJ's decision

The ALJ ultimately concluded that Plaintiff's bipolar disorder and substance use would constitute a disability, but that Plaintiff was not entitled to benefits because her substance use was a contributing factor material to the determination of her disability. (AR at 13.)

The ALJ held that if Plaintiff stopped using alcohol and marijuana, Plaintiff would still have bipolar disorder, but Plaintiff's ability to socialize and concentrate would not be as limited. (AR at 16.) In holding so, the ALJ analyzed Plaintiff's testimony and medical records according to the

Mental Disorders section of Appendix 1 to Subpart P of 20 C.F.R. § 404. Section C requires the ALJ to measure the severity of Plaintiff's mental disorder using four criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404, Subpt. P, App'x 1.

As to the first of the criteria, activities of daily living, the ALJ held that Plaintiff would have a mild limitation if Plaintiff stopped her substance abuse, because she was able to live with, and take care of, her five children. (AR at 16.)

As to social functioning, the ALJ held that Plaintiff would have a mild limitation if she stopped her substance abuse. (*Id.*) The ALJ noted that, when Plaintiff stated that she was not drinking, Plaintiff only had occasional mood swings, with no suicidal or homicidal intent. (*Id.*) And the ALJ noted that Plaintiff was able to smile at her CFS intake and the CFS notes did not mention that Plaintiff was not able to get along with the staff there. (*Id*. at 17.)

The ALJ found that Plaintiff would also have a mild limitation in concentration, persistence, or pace, if Plaintiff stopped her substance use. (*Id*.) The ALJ held so, noting that when Plaintiff was not drinking, Plaintiff stated that she was sleeping better, although she was still having crying spells and was depressed. (*Id.*)

The ALJ lastly found that Plaintiff experienced no periods of decompensation as the criteria required.

The ALJ concluded that because Plaintiff's mental limitations would cause no more than "mild" limitations in the first three functional areas and no limitation in the fourth area, Plaintiff's mental limitations would therefore be non-severe if Plaintiff stopped her substance use.

The ALJ then used the non-severe impairment analysis in calculating Plaintiff's residual functional capacity. (*Id.*) The ALJ stated that when Plaintiff was not drinking, Plaintiff's anger and concentration were not severely affected, and would not be markedly limited. (*Id.*)

The ALJ analyzed the record and concluded that Plaintiff would be limited to unskilled work if she stopped her substance use. (*Id.* at 22.) The ALJ then discussed the hypothetical that she posed to the vocational expert; the ALJ then stated that the vocational expert testified that there would be jobs in the national economy that Plaintiff could perform. (*Id.* at 23.) Because the ALJ found that there were jobs that Plaintiff could perform, the ALJ denied Plaintiff's request for benefits. (*Id.*)

### 4. The hearing

On January 4, 2010, the ALJ conducted Plaintiff's hearing. (AR at 30.) At the hearing Plaintiff stated that she drank once or twice a month, which was "[a] lot less than [she] was [previously drinking.]" (*Id.* at 37.) She also stated that, each time she drank, she drank "probably a fifth by [her]self." (*Id.*) As to her marijuana use, she stated that used to smoke daily, but that at the time of the hearing, she smoked once a week. (*Id.*)

She also testified that her doctors told her to quit both the drinking and the marijuana usage because they interfered with her medications. (*Id.*)

### B. Standard of review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla

but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**C.     Framework For Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and

2. she suffered from a severe impairment; and

3. the impairment met or was medically equal to a "listed impairment;" or

    4.  she did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

    **D.**    **Analysis**

Plaintiff puts forth two arguments as to why remand is required.  She first argues that the ALJ impermissibly dismissed and did not properly discuss Dr. Malik's medical opinion.  She then argues that the ALJ's RFC determination and the question she posed to the vocational expert at the hearing conflict with each other, and that conflict requires remand.

To support its motion for summary judgment, Defendant argues that substantial evidence supports the ALJ's decision.

    **1.**    **The ALJ properly evaluated Dr. Malik's opinion**

Plaintiff first argues that the ALJ impermissibly dismissed Dr. Malik's opinion. (Pl.'s Mot. for Summ. J. at 9.) Plaintiff argues that the ALJ should have discussed Dr. Malik's "length of treatment, frequency of examinations, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, inconsistency of opinion with the record as a whole and specialization of the treating physician." (*Id.*) Plaintiff cites 20 C.F.R. § 404.1527(d) to support her argument. (*Id.*) That section guides how ALJs weigh medical opinions–guidance language which Plaintiff cribbed in his argument above.

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, –F.3d–, 09-4309, ____WL____, at *7 (6th Cir. Sept. 22, 2011) (citing 20 C.F.R. § 404.1502). Under the treating source rule, the ALJ must "give a treating source's opinion controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give controlling weight to the treating source's opinion, she "must then balance the following factors to determine what weight to give it:" "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) and 20 C.F.R. § 404.1527(d)(2)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be

11

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. (citation omitted).

The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id*. at *10 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

If the ALJ fails to follow and agency rule or regulation, then the ALJ's failure "denotes a lack of substantial evidence, even where the [ALJ's conclusion] may be justified based upon the record." *Id*. at *11 (citation omitted).

But a failure to follow the treating source rule can be deemed "harmless" if the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[.]" *Id*. (citation omitted). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r of Soc. Sec.*, 10-25, 2011 WL 3049146 at *9 (E.D.Tenn. July 5, 2011) (citing *May v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D.Ohio Dec. 9, 2009) (finding treating source opinion patently deficient where treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence.").

Here, the evidence of Dr. Malik's evaluation of Plaintiff consists of checked boxes and no statements supporting his conclusion. (AR at 339.) The ALJ found that Dr. Malik's opinion that drugs and alcohol had no impact on Plaintiff was contradicted by the medical records. The ALJ specifically stated,

> I also give little weight to the source statement provided by Dr. Malik in December[,] 2009. Though I agree with him that [Plaintiff] does have marked limitation in her functional areas, I find that it is directly related to her drug and alcohol addiction as well as her non-compliance with treatment. Dr. Malik opines that drug and alcohol have no significant impact, which is contradicted by the medical records.

12

(*Id.* at 21-22.)

The Court agrees with the ALJ–there is substantial evidence that supports the ALJ's decision to not find Dr. Malik's opinion determinative.[3] Dr. Kumar noted that Plaintiff was doing well when she was not drinking and when she was taking her medications. (AR at 304.) The Westlund Clinic also noted that when Plaintiff was drinking and not taking her medications, she did poorly; but when she was not drinking, she did well. (*Id.* at 305, 301.) This evidence therefore is more than a scintilla that the ALJ relied upon. The Court therefore rejects Plaintiff's first argument because there is substantial evidence in the record that drugs and alcohol did have an impact upon Plaintiff.

### 2.     Remand is not required due to the ALJ's use of a different hypothetical

Plaintiff also argues that she is entitled to remand because the hypothetical the ALJ posed at the hearing was different from the hypothetical the ALJ used in her denial of benefits opinion. (Pl.'s Mot. for Summ. J. at 13.) Plaintiff does not attack the ALJ's residual functional capacity finding, but attacks the fact that the ALJ stated a different hypothetical at the hearing than in her denial. The Court does not find that this difference warrants a remand.

At the hearing, the ALJ asked the vocational expert the following hypothetical:

If you were to assume a younger individual with the capacity to perform light work,

---

[3]Even if the ALJ did not address Dr. Malik's opinion, the Court would not have to automatically remand the case. For, "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (insertion in *Kornecky*).

13

full range, unskilled, able to follow only simple instructions and perform routine tasks in a routine setting, would there be jobs that such a person could do?

(AR at 43.) The vocational expert responded that there would be a number of jobs in the national economy that Plaintiff could perform. (*Id.*)

In her denial opinion, the ALJ stated:

To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the residual functional capacity the claimant would have if she stopped the substance use. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as dishwasher . . . janitor/housekeeper . . . cashiers . . . administrative support . . . and stock clerks[.]

(AR at 23.)

Defendant argues that the ALJ's hypothetical at the hearing went beyond unskilled work to include limitations to following simple instructions and routine tasks in a routine setting. (Def.'s Mot. for Summ. J. at 10.) Defendant states that the ALJ also limited Plaintiff to light work, and that the ALJ found that Plaintiff could work at all exertional levels. (*Id.*) Defendant therefore argues that "[i]f Plaintiff could do the jobs testified to by the vocational expert, then *a fortiori* she could do those same jobs if the limitations to light work, simple instructions, and routine tasks were lifted." (*Id.*)

Unskilled work is defined as

work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing . . . or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

14

The Court agrees with Defendant–if Plaintiff could perform light work, unskilled work, then she could also perform the jobs that were solely unskilled. Any error the ALJ made in using different wording in her denial was harmless. *See Garcia v. Comm'r of Soc. Sec.*, 08-12943, 2009 WL 2843922, at *12 (E.D. Mich. Aug. 31, 2009) (Rosen, C.J.) (adopting report and recommendation) ("The ALJ's hypothetical question to the [vocational expert] was more restrictive than the ALJ's ultimate RFC findings . . . . The ALJ's decision that [the plaintiff] retained the RFC for a restricted range of light work is supported by substantial evidence. The ALJ properly relied on the [vocational expert's] testimony to find that there are a significant number of sedentary jobs available in the economy [that the plaintiff] can perform.").

Substantial evidence supports the ALJ's conclusion; the Court therefore rejects Plaintiff's second argument for remand.

### E.  Conclusion

Because the Court finds that the ALJ's decision is supported by substantial evidence and finds that Plaintiff's arguments to the contrary are unavailing, the Court recommends that Plaintiff's motion for summary judgment be DENIED, Defendant's motion for summary judgment be GRANTED, and this case be DISMISSED.

## III.  Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

15

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 10, 2011         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 10, 2011         s/ Lisa C. Bartlett
                                 Case Manager